**Tilmon PRESNELL, Plaintiff-Appellee,**

v.

**JOE P. BUIS ESTATE,
Defendant-Appellant.**

Court of Appeals of Tennessee,
Eastern Section.

Aug. 16, 1983.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 24, 1983.

Dennis H. Inman, Morristown, George D. Montgomery, Knoxville, for defendant-appellant.

Randall E. Nichols, Knoxville, J. Nicholas Holt, Maryville, for plaintiff-appellee.

## OPINION

GODDARD, Judge.

The Estate of Joe P. Buis,[1] who died on February 9, 1982, during the pendency of this suit, Defendant-Appellant, appeals a judgment rendered against him for injuries received by Tilmon Presnell, Plaintiff-Appellee, as a result of an automobile accident. The Estate presents two issues on appeal. It first insists that there was a valid settlement agreement entered into between counsel for the parties in that an accord and satisfaction was reached or alternatively that the Plaintiff should be estopped to deny that the case was settled. It also insists that there is no evidence to support a verdict for the Plaintiff and that the Court should have granted the Estate's motion for a directed verdict at the close of all the proof.

We will address the issues in reverse order and now detail the facts relating to the accident itself. On March 19, 1981, about 10:30 p.m., the Plaintiff, while proceeding in a northerly direction on U.S. Highway 25–E and either following or passing a vehicle being operated by a Mr. Beeler saw the Beeler vehicle leave the road to the right and strike a utility pole. The Plaintiff thereupon pulled his vehicle to the shoulder of the road north of the accident scene. He then got out of his vehicle to render assistance. Shortly thereafter, a second vehicle, also proceeding in a northerly direction, being operated by a Mr. Bunch, came by. He turned his vehicle around with his headlights facing south and parked in front of the Beeler vehicle. Soon thereafter, a Powell Valley Electric utility truck, proceeding in the same direction as the other vehicles, came by the scene, and seeing an electric wire had been dislodged by the accident, stopped to make repairs. To accomplish this the utility truck was also turned around and was facing south with a portion of it in the northbound lane and the remainder on the eastern shoulder of the road. The headlights of both the Beeler vehicle and the utility truck were burning and the utility vehicle also had an operating rotary warning light on the top of its cab. While these vehicles were so positioned Mr. Buis came into the picture, proceeding in a northerly direction. His version of the accident is given in the testimony of the investigating officer who quotes him as follows:

> He said, "I saw headlights in my lane coming toward me." He said, "I saw headlights in the other lane coming toward me." He said, "I hit my brakes to stop and I lost control of my vehicle because of the ice on the highway." He said, "Then I went to the right of all these vehicles." Said, "The next thing I knew I saw a group of people scattering and going in different directions." He said, "Then next I hit somebody with the right fender of my car." His vehicle was out of control. He said, "Then this person was a man." Said, "He went right over the hood of his car to the left." Mr. Buis said then, "I went on down towards the store and where my car is setting now is where I got it stopped." He said, "It scared me and I was doing all I could do. I didn't know what else to do." He said, "Where my car is parked now is where I got it stopped." That's what Mr. Buis told me.

There is also material evidence that roads were icy at the time of the accident and visibility to the accident site from the direction from which Mr. Buis came was two-tenths of a mile.

■ While we appreciate the fact that Mr. Buis was confronted with an unusual situation with two sets of headlights practically side by side facing him, and while we

---

1. The proceedings are somewhat irregular in that although the death of Mr. Buis was suggested and a motion to substitute the Estate as party Defendant was filed, no order of substitution was ever entered as mandated by Rule 25.01, Tennessee Rules of Civil Procedure. However, as no question is made as to this and the parties have proceeded as if such an order had been entered, we are not disposed to notice this omission further.

could without qualm affirm a jury verdict in his favor, we nevertheless are persuaded that given the above facts which show among other things that Mr. Buis himself admits losing control of his vehicle, that he had two-tenths of a mile to observe the scene, and that other vehicles had negotiated the route safely, reasonable minds could differ as to Mr. Buis's negligence, and that the question was properly submitted to the jury.

The facts giving rise to the first issue will now be stated. Mr. Buis had liability insurance coverage for the accident here in litigation of $10,000, and after some negotiations counsel representing the insurance company made an offer of settlement to counsel for the Plaintiff of $12,000. Thereafter, the following events occurred, as set out in the motion for summary judgment which is also in the form of an affidavit:

9. On November 25, 1981, plaintiff's attorney rejected that total offer of $12,-000, but indicated that his client would accept the total sum of $13,000, meaning $10,000 from State Farm and $3,000 from Mr. Buis. Such offer was communicated to Mr. Buis.

10. When I received word that Mr. Buis was agreeable to the $3,000 offer, the undersigned advised Mr. Nichols by letter dated December 1, 1981, that his offer was accepted and that a $3,000 check from Mr. Buis was forthcoming.

11. On December 2, 1981, having received Mr. Buis' check, the undersigned mailed said check to plaintiff's attorney along with an Order of Dismissal to be executed and returned to the undersigned for ultimate entry in this action. Under separate cover, State Farm forwarded to plaintiff's attorney its check in the amount of $10,000, along with releases to be executed by the plaintiff Presnell.

12. By letter dated December 29, 1981, the undersigned advised the Hon. Bill DeBusk, Circuit Court Clerk, that this case had been settled and requested that the bill of costs be forwarded to the undersigned. Mr. DeBusk did in fact prepare and forward to the undersigned the bill of costs.

13. Inasmuch as this case had previously been set for January 7, 1982, and having not received the Order of Dismissal from plaintiff's attorney the undersigned contacted plaintiff's attorney and was advised that the plaintiff Presnell had reneged on the agreed settlement. Plaintiff's attorney apologized and indicated that he was going to give his client "some time to think about it". Plaintiff's attorney further indicated that if the plaintiff Presnell remained adamant in his refusal to comply with the settlement agreement, that he (plaintiff's attorney) was going to withdraw from the case.

■ Although there was no countervailing affidavits filed by the Plaintiff, we are persuaded that the Trial Court was correct in overruling the motion for summary judgment. We reach this conclusion because we are not convinced that no material fact is in dispute and that the Defendant was entitled to a judgment as a matter of law. Specifically, we are referring to Section 9 where it is stated that counsel for the Plaintiff "indicated that his client would accept the total sum of $13,000," and Sections 10 and 13, wherein as to the former it is stated that the Plaintiff's counsel's "offer was accepted," and as to the latter it is stated that counsel for the Plaintiff stated that the Plaintiff "had reneged on the agreed settlement." We do not perceive that an indication that a client would accept a certain amount is equivalent to an offer of settlement which could ripen into an agreed settlement upon an offer to pay the indicated amount, and that reasonable minds might differ as to whether counsel for the Plaintiff had in fact made an offer.

■ We are of the further opinion, however, that the Court was in error in sustaining the Plaintiff's counsel's motion *in limine* to exclude any evidence relative to an accord and satisfaction in the trial of the case. While it might be that a bifurcated trial would be proper in connection with the issue of liability and of settlement or ac-

cord and satisfaction, we nonetheless believe counsel was entitled to a jury trial as to the latter issue in light of the fact that an accord and satisfaction was specifically pleaded in the answer. We accordingly remand the case for trial on this issue, and if favorable to the Plaintiff the verdict of the jury will be reinstated, and if favorable to the Defendant the cause will be dismissed.

In conclusion, we recognize that the Court's action in sustaining the motion *in limine* was not specifically made an issue on appeal, we nonetheless believe the issue raised was sufficiently broad to encompass this point, and even if not, under Rule 13(b) of the Tennessee Rules of Appellate Procedure, we are entitled to notice error which is not called to our attention.

For the foregoing reason the cause is remanded for a jury trial as to the issue of accord and satisfaction. The costs of appeal are adjudged one-half to the Plaintiff and one-half to the Estate and its surety.

FRANKS, J., and KIRBY MATHERNE, Special Judge, concur.